## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CLARK CZAPLINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  25-2057-JWB-BGS |
| | ) | |
| RON E. BALLARD, individually and in his | ) | |
| official capacity as Superintendent of Schools, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER ON MOTION TO MODIFY STAY

Now before the Court is Plaintiff's "Motion to Modify Order Staying Discovery and to Extend Deadline to Respond to Motion to Dismiss."[1]  (Doc. 18.)  Having reviewed the submissions of the parties, Plaintiff's motion is **DENIED** for the reasons set forth below.

## FACTUAL BACKGROUND

Plaintiff filed this lawsuit on February 5, 2025, alleging First Amendment retaliation and violations of his Equal Protection rights under the Fourteenth Amendment stemming from complaints he made regarding the bullying his minor son experienced while attending school in Arkansas City, Kansas.  (*See generally* Doc. 1.)  Plaintiff named Defendants Ron Ballard and Robert Onelio individually and in their official capacity as Superintendent and (former) Principal for the Arkansas City, Kansas school District.  (Doc. 1.)  Plaintiff also named Unified School District 470 Arkansas City ("the District") as a Defendant.  (*Id.*)

---

[1] By text Order dated 6/9/25, and after consultation with the District Court, the undersigned Magistrate Judge granted the portion of this motion that sought an extension of time to respond to Defendant's Motion to Dismiss.  (Doc. 19, text Order.)  Plaintiff's response deadline to the motion to dismiss was suspended and the Court indicated the deadline would be reset after a decision was reached on Plaintiff's request to modify the stay.  (*Id.*)  That deadline is addressed in the conclusion of this Order.

Defendants filed their first Motion to Dismiss on April 21, 2025. (Doc. 7.) On April 29, 2025, Defendants filed a Motion to Stay Discovery (Doc. 10) the same day that Plaintiff served his first discovery requests on all defendants. (Doc. 11.) By email to the Court and opposing counsel dated May 6, 2025, Plaintiff's counsel indicated his client would not oppose a stay of discovery pending the District Court's ruling on Defendant's dispositive motion. Thus, Defendant's motion to stay was granted by the undersigned Magistrate Judge that same day. (Doc. 12, 5/6/25 text Order.)

On May 9, 2025, Plaintiff filed his Amended Complaint, removing Robert Onelio and the District as party Defendants. (Doc. 13.) Only Defendant Ballard, in his individual capacity, remained as a Defendant. (*Id.*) This mooted Defendant's first Motion to Dismiss. (Doc. 14.) Defendant Ballard subsequently filed his Motion to Dismiss the First Amended Complaint on May 30, 2025. (Doc. 17.) Therein, Defendant argues Plaintiff's Complaint fails to state a claim for which relief may be granted while relying on the defense of qualified immunity. (*See generally id.*)

On June 4, 2025, Plaintiff filed the present motion. (Doc. 18.) Therein, Plaintiff asks the Court to modify the stay of discovery "to allow Plaintiff the opportunity to conduct limited discovery to resolve the factual issues raised in Defendant's [dispositive] motion that are integral to resolving the motion to dismiss." (*Id.*, at 2.)

## ANALYSIS

"The decision to stay discovery and other pretrial proceedings is firmly vested in the sound discretion of the trial court." *Toney v. Harrod*, No. 15-3209-EFM-TJJ, 2018 WL 5830398, at *1 (D. Kan. Nov. 7, 2018) (citing *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963); *McCoy v. U.S.*, No. 07-2097-CM, 2007 WL 2071770, at *2 (D. Kan. July 16, 2007)). That stated, Tenth Circuit has concluded that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484

(10th Cir. 1983). Thus, the District of Kansas generally disfavors staying discovery pending a ruling on a dispositive motion. *McCoy*, 2007 WL 2071770, at *2.

Even so, there are exceptions justifying a stay of discovery pending a ruling on a dispositive motion. Courts in this District have held that such a stay is appropriate "where: (1) the case is likely to be finally concluded via a dispositive motion; (2) the facts sought through discovery would not affect the resolution of the dispositive motion; (3) discovery on all issues posed by the complaint would be wasteful and burdensome; or (4) the dispositive motion raises issues as to the defendants' immunity from suit." *United States ex rel. Ernst v. College Park Ancillary, LLC*, No. 19-2085-TC, 2021 WL 533830, at *2 (D. Kan. Feb. 12, 2021) (citation omitted); *see also Toney*, 2018 WL 5830398, at *1, 2.

Defendant's dispositive motion pending before the District Court argues, in part, that Plaintiff's Complaint should be dismissed based on Defendant's qualified immunity as a government official. (See generally Doc. 17.) "When a defendant raises the qualified-immunity defense, the plaintiff must … establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020).

It is well-established in this District that "when immunity is asserted by dispositive motion, a stay of discovery is appropriate pending a ruling on the immunity issue." *Garrett's Worldwide Enterprises, LLC, et al. v. U.S.*, No. 14-2281-JTM, 2014 WL 7071713, at *1 (D. Kan. Dec. 12, 2014). While limited circumstances exist in which discovery may be permitted on narrowly tailored issues after an immunity is raised, the fact remains that "plaintiff bears the burden of demonstrating 'how [such] discovery will raise a genuine fact issue as to defendant's … immunity claim.'" *Martin v. County of Santa Fe*, 626 Fed. Appx. 736, 740 (10th Cir. 2015) (in the context of a qualified immunity defense) (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F. 3d 1373, 1387 (10th Cir. 1994)).

3

As stated by the United States Supreme Court in *Ashcroft v. Iqbal*, a plaintiff "is not entitled to discovery, cabined or otherwise," against government officials raising immunity defenses. 556 U.S. 662, 686, 129 S.Ct. 1937, 1954, 173 L.Ed.2d 868 (2009). "Immunity is immunity from liability as well as the burdens of litigation, including discovery." *Goico v. Kansas*, No. 20-1026-EFM-KGG, 2020 WL 1503493, *2 (D. Kan. March 30, 2020) (citing *Iqbal*, 556 U.S. at 672 (internal citation omitted).) *See also Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996) (internal citation omitted) (holding that it is well-established that the immunity defense gives government officials "a right ... to avoid the burdens of 'such pretrial matters as discovery....'.").

As discussed above, Plaintiff did not oppose Defendants' initial request for a stay in the context of Plaintiff's prior Complaint. Given the filing of Defendant's motion to dismiss Plaintiff's First Amended Complaint, however, Plaintiff now moves to modify the stay to allow limited discovery regarding the nature of Plaintiff's speech at issue:

> Defendant's arguments, including those related to qualified immunity, turn almost entirely on asserting that Plaintiff's expression leading to the retaliatory ban was unprotected under the First Amendment. See, e.g., Doc. 17, p. 6 ("Czaplinski's speech was not constitutionally protected activity…."); p. 8 ("Czaplinski's 'speech' was not constitutionally protected activity."); pp. 9 and 10 (analogizing Plaintiff's expression to a "physical confrontation" with a superintendent and a "continuing pattern of verbal abuse and threatening behavior towards school officials"); and p. 13 (qualified immunity depends on "whether the protected nature of Plaintiff's speech was sufficiently clear that defendants should have been reasonably on notice they were not entitled to regulate it.").
> Here, whether Plaintiff's expression is unprotected depends on whether it fits into 'historic and traditional categories' of unprotected speech, including defamation, obscenity, and most relevant here, true threats. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023).

(Doc. 18, at 3-4.)

Plaintiff contends that Defendant's dispositive motion "seizes" on the "crucial issue" of whether "Plaintiff's expression is categorically unprotected" by alleging Plaintiff's expression, which resulted in Defendant's ban, falls in one of the categories" of speech that would "justify silencing

Plaintiff from raising his legitimate concerns about the bullying of his son." (*Id.*, at 4.) Plaintiff thus

argues he is entitled to "limited discovery for the purpose of establishing the evidence on which

Defendant bases his contention that Plaintiff's expression leading to Defendant's retaliatory ban was

not constitutionally protected, namely, all evidence of Plaintiff's expression, as well as Defendant's

perception and understanding of that expression, from January 25, 2023, until February 6, 2023."

(*Id.*, at 4-5.) According to Plaintiff, "none of the exceptions" to the general rule against staying

discovery "justif[ies] a complete bar to discovery" in the present case. (*Id.*, at 5.) Plaintiff then

analyzes each of the exceptions. (*Id.*, at 5-9.)

 Defendant's brief in opposition largely ignores discussion of the exceptions to the rule

against staying discovery and instead responds that discovery is "both unnecessary an [sic]

inappropriate to enable Plaintiff to respond to Defendant's motion to dismiss … ." (Doc. 21, at 1.)

Defendant focuses on the final exception – qualified immunity. According to Defendant, the First

Amended Complaint

> fails to state a claim of First Amendment Retaliation for which relief
> can be granted. This is a purely legal question which the court must
> resolve without and discovery – however limited it may be. Further,
> Defendant raised the defense of qualified immunity, which raises
> purely legal questions that can also be resolved by this Court without
> the aid of any further discovery.

(*Id.*, at 2.)

 According to Defendant, "[o]ne of the central tenants of qualified immunity is the

protection of the government official from the burdens of litigation, including from discovery." (*Id.*,

at 2-3 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985).) The

*Mitchell* decision stands for the proposition that the qualified immunity doctrine was

> refashioned … in such a way as to 'permit the resolution of many
> insubstantial claims on summary judgment' and to avoid "subject[ing]
> government officials either to the costs of trial or to the burdens of
> broad-reaching discovery" in cases where the legal norms the officials
> are alleged to have violated were not clearly established at the time. …

> Unless the plaintiff's allegations state a claim of violation of clearly
> established law, a defendant pleading qualified immunity is entitled to
> dismissal before the commencement of discovery.

472 U.S. at 526, 105 S.Ct. at 2816 (citation omitted) (emphasis added).

The Supreme Court has also held that the "driving force" behind creation of the qualified immunity doctrine was to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, the courts "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 656 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

The Tenth Circuit recognizes that after the qualified immunity defense has been raised there is a "strong policy justification for staying discovery and for refusing requests for additional discovery … ." *Martin v. County of Santa Fe*, 626 Fed. Appx. 736, 740 (10ᵗʰ Cir. 2015). The Tenth Circuit has specifically held that discovery, like other pretrial matters, is "'to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government.'" *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (quoting *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806 (internal quotations omitted).

That stated, Defendant acknowledges that the qualified immunity defense does not create an "all-encompassing ban on discovery." (Doc. 21, at 3 (citing *Martin*, 626 Fed. Appx. at 740).) Rather, in order to be allowed to engage in discovery, a plaintiff facing a qualified immunity defense must establish "how such discovery will raise a genuine fact issue as to the defendant['s] qualified immunity claim." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1387 (10ᵗʰ Cir. 1994).

As stated above, in the present matter, Plaintiff contends discovery is needed to establish "the evidence on which Defendant bases his contention that Plaintiff's expression leading to

Defendant's retaliatory ban was not constitutionally protected, namely, all evidence of Plaintiff's expression, as well as Defendant's perception and understanding of that expression, from January 25, 2023, until February 6, 2023." (Doc. 18, at 5.) Or, as more succinctly described by Defendant, Plaintiff contends discovery is needed "to determine the true nature of [Plaintiff's] phone calls to the Arkansas City Middle School between January 25, 2023, and February 6, 2023, and whether they fall into an unprotected category of speech." (Doc. 21, at 3 (citing Doc. 18, pp. 4-5).)

In opposition to Plaintiff's motion, Defendant relies on the case of *Mahanoy Area Sch. Dist. v. B.L.*, for the proposition that school districts have "special characteristics" when it comes to the regulation of speech and the application of First Amendment rights. (Doc. 21, at 3-4 (citing *Mahanoy*, 594 U.S. 180, 187, 141 S.Ct. 2038, 2044, 210 L.Ed.2d 403 (2021) (quoting *Hazelwood Case Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 567, 98 L.Ed.2d 592 (1988)).) It is true, as Defendant contends, that *Mahanoy* recognizes that these "special characteristics" of schools "call for special leeway when schools regulate speech that occurs under its [sic] supervision." (*Id.*)

That stated, *Mahanoy* and related cases largely address the regulation of <u>student</u> (or school employee) speech, not the speech of parents or others who happen to be on school property or interacting with school staff. *See generally* 594 U.S. 180; *see also Tinker v. Des Moines Ind. Comm. School Dist.*, 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969) (holding that students have the right to express their opinions, even on controversial topics, if they do so "without 'materially and substantially interfer(ing) with the requirements of appropriate discipline in the operation of the school' and without colliding with the rights of others" (internal citation omitted)). Even so, the Court finds these legal tenets to be applicable to the situation presented – schools should have the ability, within certain, limited parameters, to regulate speech or other activities that would "materially and substantially" interfere with the operation of the school.

Defendant contends that Plaintiff's claims, as plead in the operative Complaint, establish that he made "multiple calls to the Arkansas City Middle School during the school year, during the school day, to lodge his various complaints." (Doc. 21, at 4.) According to Defendant,

> [t]his conduct falls within the control of the school and the maintenance of the tranquility of the school. No additional discovery into the content of those calls will change the fact that Superintendent Ballard had the 'special leeway' discussed in *Tinker, Mahanoy*, and *Hazelwood* to restrict Plaintiff's access to the school environment.

(*Id.*) Defendant further argues that "[a]ny additional discovery into the content of Plaintiff's phone calls to the school in January and February of 2023 will not aid the Court in making the legal determination of whether the Plaintiff has overcome the presumption of qualified immunity." (*Id.*, at 5 (citing *Kehler v. Ward*, No. 21-3251-HLT-ADM, 2022 WL 6993001, at *2 (D. Kan. Oct. 12, 2022) (holding that plaintiff "does not need discovery to respond to the pending motion [to dismiss based on qualified immunity].")).)

The Court agrees with Defendant. Plaintiff has failed to establish how the requested discovery would help establish whether Plaintiff's statements – of which he should be intimately aware without need for further discovery – fall into an unprotected category of speech or whether Defendant is qualifiedly immune from suit.

> [A]llowing plaintiff to use discovery 'as a fishing expedition to flesh out the merits of his claim' is 'not an appropriate use of discovery in response to a qualified immunity defense.' In that regard, the discovery plaintiff seeks will not assist him in addressing the individual defendants' qualified immunity defenses, at least not at this stage. Plaintiff may counter the qualified-immunity defense by 'rest[ing] on facts as alleged in the pleadings.'

*Arnold v. City of Olathe, Kansas*, No. 18-2703-CM-JPO, 2019 WL 2438677, at *3 (D. Kan. Mar. 8, 2019) (footnote citations omitted).

Plaintiff replies that his "pleadings do not include any allegations that could be construed as him materially disrupting classwork or doing anything that 'involves substantial disorder or invasion

of the rights of others' as required under *Mahoney* and *Tinker* before any 'special leeway' is appropriate." (Doc. 22, at 2.) Even assuming this to be true, however, this is irrelevant to the Court's determination of whether discovery should be allowed in the context of the issues raised by Defendant's dispositive motion.

As argued in Defendant's motion to dismiss, the First Amended Complaint fails to state a viable claim that Defendant Ballard, as school superintendent, violated "clearly established" First Amendment rights when Plaintiff was banned from school property and events. (Doc. 17, at 12-13.) The Court thus finds that it is appropriate to maintain the discovery stay in light of Defendant's qualified immunity assertions.

In reaching this conclusion, the undersigned Magistrate Judge is not commenting on the viability of Plaintiff's First Amended Complaint or the defense of qualified immunity. The Court has merely determined that additional discovery is unnecessary for the District Court's determination of the issues raised in Defendant's dispositive motion.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Bradley v. United States*, No. 16-1435-EFM-TJJ, 2017 WL 4310224, at *3 (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)). Plaintiff has failed to convince the Court otherwise. Plaintiff's motion does not establish how discovery would relate to, or assist with the determination of, the issue of immunity. Plaintiff's motion is, therefore, **DENIED**.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Modify Order Staying Discovery (Doc. 18) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's deadline to respond to Defendant's Motion to Dismiss (Doc. 17) is reset for **August 4, 2025**.

IT IS SO ORDERED.

Dated July 14, 2025, at Wichita, Kansas.

/S/BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge