IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CLARK CZAPLINSKI,

           Plaintiff,

v.                                                   Case No. 25-2057-JWB

RON E. BALLARD, in his individual capacity,

           Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 17.) The motion has been fully briefed and is ripe for decision. (Docs. 24, 25.) The motion is DENIED for the reasons stated herein.

**I.  Facts**

The facts set forth herein are taken from the amended complaint. (Doc. 13.) Plaintiff is a parent of children who attended public schools in Unified School District 470, Arkansas City, Kansas ("the district"). Defendant Ron Ballard is the superintendent of schools for the district. Plaintiff's child, C.C., attended grades six through eight at Arkansas City Middle School ("ACMS") from 2020 through the spring of 2023. During that time, C.C. was subjected to bullying by other students. (Doc. 13 at 1–2.)

The district has a bullying policy which prohibits bullying consistent with state law. The policy prohibits bullying by students, staff members, or parents towards any other student, staff member or parent that that is:

> sufficiently severe, persistent or pervasive that such gesture, act or threat creates an intimidating, threatening or abusive educational environment that a reasonable person, under the circumstances, knows or should know will have the effect of: (i)

> Harming a student or staff member, whether physically or mentally; (ii) damaging a student's or staff member's property; (iii) placing a student or staff member in reasonable fear of harm to the student or staff member; or (iv) placing a student or staff member in reasonable fear of damage to the student's or staff member's property.

K.S.A. § 72-6147(a)(1)(A); *see also* Doc. 13-1 at 1 (the district policy on bullying).

When C.C. was in the eighth grade, he was bullied by students on several occasions. Such conduct included being pinned against the walls, stealing his homework, and touching his genitalia. During the first semester, Plaintiff reported this conduct to school personnel and also expressed an opinion that the district was not doing enough to protect C.C. The bullying continued into the second semester. (Doc. 13 at 3.) On or about January 25, 2023, ACMS students drew an image of a penis on C.C.'s forehead with a permanent marker. (Doc. 13-2.) On January 26, Plaintiff called the Kansas State Department of Education ("KSDE") to report that the marker incident showed that district officials were not "doing enough to protect C.C. from bullying." (Doc. 13 at ¶ 19.) Plaintiff then called the district's clerk of the Board of Education to ask how to file a sexual harassment grievance on behalf of C.C. under Title IX. (*Id.* at ¶ 20.) Between January 26 and February 2, Plaintiff made phone calls to district personnel to voice his concerns that the district was not taking C.C.'s safety seriously even after the marker incident. (*Id.* at ¶ 22.) Although the amended complaint does not identify the number of calls, Plaintiff's original complaint stated that he had made eleven calls during this period. (Doc. 1 at ¶ 45.)

On February 3, a district employee called Plaintiff to notify him of a meeting with district personnel on February 6. The employee did not explain the reason for the meeting. (Doc. 13 at 4.) Plaintiff, who is disabled, told the employee that he was unable to attend the meeting due to a scheduled doctor's appointment. (*Id.* at ¶ 26.) After the call, a district employee called Plaintiff's wife and demanded that she attend a meeting that day. (*Id.* at ¶ 28.) That same day, Plaintiff's

2

wife attended a meeting with Defendant and other district personnel. At that meeting, Plaintiff contends that district personnel "falsely alleged" that Plaintiff had harassed district personnel. (*Id.* at ¶ 30.) Plaintiff's wife was also told that the ACMS principal had "standing to pursue a civil action against Plaintiff for harassment." (*Id.* at ¶ 31.) District personnel further "falsely" stated that Plaintiff had bullied district personnel during phone calls and while at the school in person on February 2, 2023. (*Id.* at ¶ 32.) According to Plaintiff, he did not visit the school from January 25 to February 6, 2023. Plaintiff further alleges that he did not violate the district's bullying policy. (*Id.* at ¶ 35.)

On February 6, Defendant banned Plaintiff from any USD 470 school property and school activity (home or away) unless Plaintiff obtained permission from Defendant. (Doc. 13-4.) Plaintiff was also prohibited from communicating with the school and notified that any phone calls would be reported to the district's attorney. According to Defendant, this was due to Plaintiff's harassing behavior during phone calls and in person which violated the district's bullying policy. (Docs. 13-4; 13-5.) The district also notified Plaintiff that these incidents were investigated and shared with the Arkansas City Police Department. (Doc. 13 at ¶ 44.) Due to the ban, Plaintiff did not contact the school, attend any events, nor attempt to go on school property. This resulted in Plaintiff missing C.C.'s band concerts, parent/teacher conferences, parties, school trips, ceremonies, and sporting events. Plaintiff also had to rely on a neighbor to take his younger child to school as a result of the ban. (*Id.* at 8–9.) Moreover, Plaintiff alleges that students continued to bully C.C. throughout the ban. (*Id.* at ¶ 47.) On August 15, 2023, Plaintiff signed a parental agreement under which he agreed to abide by school regulations and the ban was lifted. According to Plaintiff, his reputation has been harmed as the Arkansas City community has knowledge that Plaintiff was banned from school property. (*Id.* at 9.)

Plaintiff filed this action against Defendant alleging that he violated his first amendment right to free speech by retaliating against him after his complaints. Defendant has moved to dismiss the claim against him on the basis that it fails to state a claim and because he is entitled to qualified immunity.

**II.     Standard**

Dismissal. In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Section 1983 Qualified Immunity. Defendant moves for dismissal based on qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). When the defense of qualified immunity is asserted, the burden shifts to plaintiff who must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

**III.    Analysis**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that Defendant retaliated against him in violation of his First Amendment rights.

The First Amendment bars government officials from retaliating against individuals for engaging in protected speech. *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998). To make out a claim for unlawful retaliation by government officials in response to a plaintiff's exercise of his First Amendment right to free speech, the plaintiff must show: 1) that he was engaged in constitutionally protected activity; 2) Defendant's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) Defendant's adverse action was substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. *Bentz v. City of Marion, Kansas*, 776 F. Supp. 3d 951, 975 (D. Kan. 2025) (citing *Van Deelen v. Johnson,* 497 F. 3d 1151, 1155-56 (10th Cir. 2007)). "Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001).

### A. Plausible Allegation of Violation

Turning to the elements, Defendant argues that Plaintiff has not established any of the elements of his claim. With respect to the first element, Defendant states that Plaintiff's speech was not constitutionally protected because a school can regulate conduct and the speech was not a matter of public concern.

To establish the first element, Plaintiff must show he was engaged in constitutionally protected activity. Plaintiff was clearly seeking help from the school to address the bullying and

airing his grievances regarding the alleged inaction by the school to stop the bullying. Plaintiff's criticisms to the district and his complaint to KSDE regarding the district's inaction in the face of repeated bullying is protected speech. *See Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion.") Further, Plaintiff was reporting a violation of Title IX, which is protected under the First Amendment. *See Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1056–57 (D. Kan. 2021). Moreover, although Defendant asserts that this is not a matter of public concern and therefore Plaintiff cannot establish that the first element is met here, that test is only applicable for claims brought by government employees. *Van Deelen*, 497 F.3d at 1156 (holding that the "public concern" test' scope "reaches no further" beyond claims brought by public employees).

Defendant further argues that the court must apply the First Amendment in light of the special circumstances in the school environment. (Doc. 17 at 5.) Defendant is correct that under *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180 (2021), a school may regulate student speech when that speech materially and substantially interferes with school operations.[1] However, at this stage of the proceedings, Plaintiff's allegations do not suggest that he was interfering with school operations. According to Plaintiff, he never stepped foot on school grounds. Rather, he made calls to the school as a concerned parent. The court must take Plaintiff's allegations as true, and, on its face, the amended complaint does not support a finding that Plaintiff was materially and substantially interfering with school operations.

Defendant also asserts that Plaintiff does not have a protected interest to enter school property and that school officials have authority to regulate a person's conduct on school property.

---

[1] At this stage, the court need not determine whether this same standard applies to parent speech. *See McElhaney v. Williams*, 81 F.4th 550, 557–58 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 696 (2024). Even if the standard did apply, Plaintiff's complaint has sufficiently stated a violation.

In support, Defendant cites to *Hirt v. Unified Sch. Dist. No. 287*, 2019 WL 1866321, at *9 (D. Kan. Apr. 24, 2019).[2] In that case, Judge Teeter was addressing whether the plaintiff had a protected property interest that would implicate a due process claim. Plaintiff is not asserting a due process claim and he does not need to show that he has a constitutional right to be on school property to succeed on his claim that Defendant retaliated against him by banning him from school property. *See Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) ("The government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech—even though the person has no right to the valuable governmental benefit and even though the government may deny him the benefit for any number of reasons.") (citation modified).

The remaining cases cited by Defendant are also not persuasive. Those cases find that there was no First Amendment violation or that the defendant was entitled to qualified immunity based on facts regarding the plaintiff causing a disturbance with his speech. (Doc. 17 at 9–10.) At this stage of the proceedings, there is nothing regarding the speech that would indicate it is not protected. Therefore, the court finds that Plaintiff has plausibly alleged that he engaged in speech protected under the First Amendment.

Next, the court considers whether Defendant's actions would chill an ordinary person. The Tenth Circuit employs an objective test for this element. *Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022). Defendant argues that his actions would not chill an ordinary person because Plaintiff does not have a constitutional right to enter school grounds and because he can communicate with the school by mail. (Doc. 17 at 11–12.) Defendant's arguments are not persuasive. Banning a parent from school grounds and all school activities after the parent called

---

[2] *aff'd sub nom. Clark v. Unified Sch. Dist. No. 287*, 822 F. App'x 706 (10th Cir. 2020).

7

to communicate concerns regarding bullying of his child would chill an ordinary person from continuing to complain to school officials. *See Schmidt v. Huff,* No. 25-CV-2081-EFM, 2025 WL 2374153, *8 (D. Kan. Aug. 14, 2025) (banning from school property sufficient to establish chilling effect on speech) (citing *McCook v. Springer Sch. Dist.*, 44 F. App'x 896, 905 (10th Cir. 2002); *Vollmecke v. Indep. Sch. Dist.*, 753 F. Supp. 3d 792, 809 (W.D. Mo. 2024). Further, Defendant also notified that any further calls would be reported to the city attorney and a district employee told Plaintiff that he could be liable in a civil suit. Although a threat of prosecution, standing alone, may not be sufficient to support a First Amendment retaliation claim, these threats along with the ban are sufficient here. *See How v. City of Baxter Springs, Kan.*, 217 F. App'x 787, 798 (10th Cir. 2007).

Finally, the court is to determine whether Defendant's actions in banning Plaintiff from school property were substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. Here, Plaintiff alleged that on January 26 he complained to the KSDE and notified the district that he wanted to file a Title IX complaint. Plaintiff then made several calls to the district regarding the bullying and voicing his concerns from that date until February 2. On February 6, Defendant notified Plaintiff of the ban from school property along with instructing him not to contact the school or he would be reported to the district's attorney. Plaintiff was told that the ban was due to his calls to the school and behavior on school grounds. That, along with the close temporal proximity to Plaintiff's protected speech, is sufficient for the court to infer a retaliatory motive at this stage of the proceedings. *Douglass v. Garden City Cmty. Col.*, 652 F. Supp. 3d 1329, 1347 (D. Kan. 2023) (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014); *see also Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (must be "close temporal proximity").

Therefore, the court finds that Plaintiff has plausibly pled a claim of retaliation for exercising his First Amendment rights.

### B. Clearly Established

Next, the court must determine whether the right at hand was clearly established. For purposes of qualified immunity, the law is clearly established if Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, would put a reasonable official on notice that he was violating the right at issue. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017). While there need not be a case exactly on point, existing caselaw must have placed the constitutional issue "beyond debate." *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) and *White v. Pauly*, 580 U.S. 73, 79 (2017)). In other words, a "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation modified).

Courts are not to define "clearly established law at a high level of generality." *Id.* at 12. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id*. Here, the court is presented with the amended complaint which must be taken as true. Those allegations are that Plaintiff made complaints to the KSDE, initiated a Title IX complaint, and called the district to voice his concerns about bullying and inaction. Faced with those allegations, the court concludes that Defendant was on notice that banning Plaintiff from entering school property, prohibiting all contact with the school, and threatening legal action was barred under the First Amendment.

"It has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005).

"[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Further, it is a "well established principle that the government may not deny a benefit to a person because of his constitutionally protected interests." *Seamons*, 84 F.3d at 1238 (student was dismissed from the football team after bringing an incident to the attention of the school's administration and others). Courts in this district have determined in similar circumstances that the law was "clearly established that retaliation for exercising constitutionally protected rights under the First Amendment to the Constitution violates Section 1983." *Douglass*, 543 F. Supp. 3d at 1056; *Schmidt*, 2025 WL 2374153 at *8–9 and n. 38 (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968)); *see also McElhaney v. Williams*, 81 F.4th 550, 557–59 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 696 (2024).

## IV.     Conclusion

Defendant's motion to dismiss (Doc. 17) is DENIED.

IT IS SO ORDERED.  Dated this 23rd day of October, 2025.

                                                         s/ John W. Broomes  
                                                         JOHN W. BROOMES  
                                                         CHIEF UNITED STATES DISTRICT JUDGE